UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REBECCA BRZEG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00491-TWP-CSW |
| | ) | |
| NATIONAL INDOOR RV CENTER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT

Presently before the Undersigned Magistrate Judge is *Plaintiff's Motion to Enforce Settlement and Settlement Agreement*, seeking to compel the Defendant to settle this case for a monetary amount contained in an email communication memorializing that both counsel for Plaintiff and counsel for Defendant agreed. (Dkt. 62). More specifically, the task at hand is to determine whether representations initiated by defense counsel Kelly Milam ("Milam") of Gordon Rees Scully Mansukhani ("GRSM") constitute a valid and enforceable settlement under federal and Indiana law.

For the reasons that follow, the Undersigned recommends that *Plaintiff's Motion to Enforce Settlement* be **DENIED**.

I.  **FINDINGS OF FACT**

The Court set the matter for an evidentiary hearing to occur on September 17, 2025. ("Evidentiary Hearing"). (Dkt. 65). These findings are based upon evidence presented at the Evidentiary Hearing, the parties' briefs and declarations, and the record.

Plaintiff Rebecca Brzeg ("Plaintiff") brought this lawsuit against her former employer, the Defendant, National Indoor RV Centers, LLC ("National RV"), for

1

allegedly violating her rights as protected by the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA").

At all relevant times, Attorney Milam of GRSM served as Defendant's lead counsel.[1] Later in the representation, Attorney Morgan Klutho, an associate at GRSM ("Associate Attorney Klutho"), also filed her Appearance for National RV. (Dkt. 76). Since the inception of this case, Defendant's General Counsel, Julie Davis Gebert ("Gebert"), has acted as National RV's representative. (*Id.*) National RV is insured by Great American Insurance Company ("GAIC"). (*Id.*). GAIC assigned Kathleen Van Deven as its claim representative. (*Id.*). The relevant GAIC Policy contains a consent-to-settle provision which states the "Insurer has the right to settle any Claim *with the consent of the Insured.*" (*Id.*) (emphasis added).

Turning first to the timeline on negotiations, National RV's settlement position has been communicated at several junctures. On January 13, 2025, the Court scheduled a Settlement Conference by agreement of the parties for April 17, 2025. A Joint Report, filed on April 15, 2025, agreed to by lawyers for both parties, stated that National RV intended to begin the Settlement Conference with a monetary offer. However, less than two hours after filing the Joint Report, Milam submitted a contradictory *ex parte* communication to chambers of the Undersigned advising that she had "just learned" in communicating with her client that National RV would not make any monetary offer at the Settlement Conference after all.

The Settlement Conference proceeded as scheduled. Gebert attended the Settlement Conference, along with Associate Attorney Klutho. National RV reiterated that it was not willing to offer money to the Plaintiff to settle the case. The Settlement Conference thus concluded unsuccessfully.

Thereafter, the Court ordered the parties to private mediation. (Dkt. 44 and Dkt. 76). They proceeded to private mediation as ordered. However, National RV

---

[1] On September 3, 2025, National RV hired new defense counsel Ms. Tonya Bond. (Dkt. 66.) Ms. Bond appeared after *Motion to Enforce* was filed, provided National RV's *Brief in Opposition*, and appeared on National RV's behalf at the Evidentiary Hearing.

2

again did not make any monetary offer at the private mediation. Essentially, settlement discussions altogether ceased at that point.

Months later, in early August 2025, and apparently, seemingly "out of the blue," Associate Attorney Klutho, at the direction of her supervising attorney and Lead Counsel in this matter (Milam), called Plaintiff's counsel by phone and suggested that "the stars had aligned," for settlement. Attorney Klutho inquired whether Plaintiff would be willing to resolve her case for her last demand made at the private mediation. As a result of the inquiry, Plaintiff's counsel endeavored to determine his client's interest in resolving the case; secured his client's authorization and approval to resolve the case for the last demand at mediation; and then affirmatively communicated to Attorney Klutho that his client would agree to settle her case for the finite sum of her last demand.

Thereafter, on August 5, 2025, Attorney Klutho sent an email to Plaintiff's counsel confirming the settlement for the agreed monetary amount. ("Klutho Email.") (Dkt. 76). Specifically, Plaintiff's counsel received the following Klutho Email:

Hi Shannon and Bradley,

Per our conversation, we are settled for $ I have reattached our proposed settlement agreement here. Take a look and let me know if/what changes you have and we can get this one finalized. Have a good day!

GRSM50
GORDON REES SCULLY MANSUKHANI
YOUR 50 STATE LAW FIRM™

MORGAN C. KLUTHO
Associate

One North Wacker, Suite 1600, Chicago, IL 60606

At that point, Plaintiff and her attorneys, relying upon Attorney Klutho's representations and the Klutho Email, believed the case was settled, and responded with an alternative draft of the settlement agreement, proposing revisions relating to payment terms. Plaintiff believed those revisions minor and unlikely to be objectionable.

3

Yet, trouble ensued, albeit not necessarily due to the proposed revisions. Apparently, and according to the testimony of National RV, National RV was not aware that GRSM was holding settlement discussions with Plaintiff at all, let alone for an amount certain or on terms for a settlement agreement.

National RV expressed shock upon learning of the "settlement." National RV denied having ever given its defense counsel Milam, Klutho, any other GRSM agent, (or anyone else) authorization to settle the case for *any* monetary amount. In fact, National RV contends that it would not agree to settle the case for even one dollar. National RV insisted that it had consistently communicated that it would not agree to offer a monetary amount for settlement, and there had been no change in that position. Therefore, National RV refused to authorize or execute any settlement agreement. After unsuccessful conferrals between counsel to resolve the issue, Plaintiff filed her *Motion to Enforce Settlement and Settlement Agreement*. (Dkt. 62). The Court set the matter for an in-person, evidentiary hearing ("Evidentiary Hearing"). (Dkt. 65).

The Evidentiary Hearing occurred on September 17, 2025. At the start of the Hearing, the Undersigned confirmed that the parties had not been able to mutually resolve the dispute. Klutho, Milam, Gebert, and Mark Rocco testified, and the parties offered exhibits, which were admitted into evidence. Attorneys Wilson, Bond, and Milam provided an oral argument. (Dkt. 79). The matter is now fully briefed and ripe for determination.

## II. APPLICABLE LAW

Settlement agreements are governed by local contract law. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). Here, Indiana law serves as the "local" law. *See Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (citing *Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004) (citing *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000)).

"A settlement agreement is merely a contract between parties to the litigation." *Carr,* 89 F.3d at 331 (7th Cir. 1996). Indiana contract law holds that a

4

"valid contract consists of an offer, acceptance, consideration, and mutual assent." *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 617 (Ind. Ct. App. 2015).

Federal law presumes that an attorney of record has authority to enter into a settlement agreement on behalf of her client. *Hartman v. Hook-Superx Inc.*, 42 F. Supp. 2d 854, 855 (S.D. Ind. 1999). However, that presumption is rebuttable. *Greater Kansas City Lab. Pension Fund v. Paramount Indus., Inc.*, 829 F.2d 644, 646 (8th Cir. 1987). Additionally, the Indiana Supreme Court has held that attorneys representing clients are not cloaked with authority to settle cases without client consent in out-of-court settlement discussions. *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1301 (Ind. 1998).

"Under general principles of Indiana agency and contract law, a principal will be bound by a contract entered into by the principal's agent on his behalf only if the agent had actual or apparent authority to bind him, or if the principal subsequently ratifies the agreement." *Carr*, 89 F.3d at 331. Additionally,

> …in Indiana, an attorney's authority to enter into a settlement agreement on behalf of his client may be derived from two distinct sources: (1) the conduct of the client either toward third parties or toward the attorney; and (2) the nature of the proceedings where the settlement agreement was entered into.

*Beam v. Wal-Mart Stores, Inc.*, 829 F. Supp. 2d 706, 708 (S.D. Ind. 2011). The moving party bears the burden of demonstrating that an attorney had authority to settle a case. *Id.*

Here, then, the Court must determine whether GRSM had authority to offer a monetary amount for settlement and if so, whether there is an enforceable settlement agreement. Notably, all discussions regarding the settlement amount and associated terms occurred between counsel in out-of-court discussions.

### III. DISCUSSION

#### A. AUTHORITY TO SETTLE

Based upon the evidence admitted at the Evidentiary Hearing and in support of the opposition to the *Motion to Enforce*, GRSM attorneys did not have the

5

authority from National RV to offer any monetary amount for settlement at any time, let alone the stated amount in the Klutho Email.

As this Court noted in *Beam*, the "retention of an attorney by a client does not constitute implied authority to settle a claim nor does it constitute a manifestation to third parties that the attorney has apparent authority to do so in an out-of-court proceeding." *Id.* (citing *Bay v. Pulliam,* 872 N.E.2d 666, 668 (Ind. Ct. App. 2007) (internal quotations omitted)). Implied authority "can be obtained from words used, from customs, or from the relations of the parties involved." *Id.* at 708–09, citing Restatement (Second) of Agency § 7 cmt. c (1958). Apparent authority "exists when a third party reasonably believes an agent possesses authority because of some manifestation from the principal." *Id.* at 709. To repeat, and importantly, "apparent authority to settle is not conferred simply by the retention of an attorney." *Id.* Instead, there "must be some form of communication, either direct or indirect, from the principal that instills a reasonable belief in the mind of the third party." *Id.*

Unbeknownst to the Plaintiff and her attorneys, the GRSM attorneys had no authority–direct or indirect–from the principal, National RV, to communicate an offer or acceptance of any monetary settlement.

### i.  LACK OF IMPLIED AUTHORITY

In this case, neither National RV's words nor its conduct suggest implied authority was conferred on GRSM to offer a monetary amount for settlement. Indeed, National RV's conduct and communications offered at the Evidentiary Hearing and in the briefing consistently maintained that National RV did not and would not agree to any monetary settlement, and that National RV wished to proceed to trial. An attorney "does not have the implied authority to settle a claim merely by being retained by the client." *Id.* Instead, implied authority arises "from words used, from customs, or from the relations of the parties." *Koval,* 693 N.E.2d at 1302.

6

As outlined in the Declaration of National RV's General Counsel, Julie Davis Gebert, "Defendant has a longstanding policy to never settle employment claims that include monetary terms in advance of trial." (Dkt. 76-1). Additionally, Gebert testified: "[s]ince at least November 14, 2023, Defendant has consistently and unequivocally told GRSM and GAIC [National RV's insurer] that it will not offer any monetary settlement." (*Id*.). This position was outlined in a November 14, 2023, email to GRSM counsel[2], as well as GAIC representative Van Deven, where Gebert stated, "[w]e are not interested in settling this matter." (*Id*.).

Additionally, the history of settlement negotiations further supports National RV's stated intent not to settle the case. Over the course of several months, National RV repeatedly refused to make any monetary offer to settle the case. During the April 14, 2025 Status Conference in preparation for the April 17, 2025 Settlement Conference, the Court noted National RV had never offered any monetary amount, or even substantively responded at all, to Plaintiff's July 18, 2024, December 9, 2024, and April 2, 2025 settlement demands. (Dkt. 43).

Moreover, on April 15, 2025, Milam submitted an *ex parte* communication to the Court that National RV instructed her that it would not be making any monetary offer at the Settlement Conference. The Court addressed this communication with both parties in an order and in person on the day of the Settlement Conference. At that time, GRSM appeared with Gebert and reiterated National RV's refusal to offer any monetary consideration.

Following the unsuccessful Settlement Conference, the parties then participated in private mediation, as ordered, on June 12, 2025, where National RV again reiterated its refusal to make any monetary offer to resolve the case.

Arriving at the key communications at hand, Associate Attorney Klutho's phone call to Plaintiff's counsel on August 5, 2025, to inquire as to whether Plaintiff would be willing to settle the case, came as marked departure from National RV's

---

[2] National RV elected to waive the attorney-client privilege as to communications offered in support of its opposition to the *Motion to Enforce.*

7

previous and consistent position. As Plaintiff's counsel admitted, this communication was "out of the blue and surprising." (Dkt. 63).

Associate Attorney Klutho testified that her directive to contact Plaintiff's counsel to settle the case came from her supervising partner Milam – not National RV. Attorney Klutho further testified that she "heard from–through [my] conversations with Ms. Milam that the insurer had gotten consent with [Defendant's] CFO to settle the case." In other words, Klutho did as she was directed by her supervising attorney, Milam.

Additionally, while Klutho's testimony at the Evidentiary Hearing may have suggested that the insurer, GAIC, desired to offer a monetary settlement, there was no evidence presented suggesting GAIC had in fact obtained National RV's consent to offer a monetary settlement, despite the express requirement in the policy that the GAIC must obtain consent from National RV to settle any claim. (Dkt. 76). There also was no evidence that the insurer had a conversation with any representative of National RV in advance of the Klutho Email or phone call. GAIC's desire to settle the case cannot supplant the consent of the actual client-insured. *See Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co.*, 129 F.2d 621, 626 (10th Cir. 1942) (noting that while the insurance company's "obligation to defend and to pay is primary and paramount," the rights of the insurer are "not absolute").

Therefore, GRSM had no implied authority to offer a monetary amount for settlement on behalf of National RV.

### ii.   LACK OF APPARENT AUTHORITY

GRSM attorneys also did not have apparent authority to offer a monetary settlement on behalf of the Defendant.

Similar to implied authority, "apparent authority to settle is not conferred simply by the retention of an attorney." *Beam*, 829 F. Supp. 2d at 709. Instead, "apparent authority can only come from the direct or indirect manifestations of the principal but does not arise 'from the representations or acts of the agent.'" *Id.* (citing *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000)).

8

Here, National RV, as the principal, needed to make direct or indirect manifestations of its intent to offer a monetary settlement. No such manifestations occurred. Instead, the evidence established that National RV "has a longstanding policy to never settle employment claims that include monetary terms in advance of trial" and that National RV communicated that policy both to its attorneys and directly by way of its in-house counsel at both the Settlement Conference and the private mediation. (Dkt. 76-1).

Therefore, as discussed *supra*, because National RV made no direct or indirect manifestations of its intent to offer a monetary settlement, the GRSM attorneys did not have apparent authority to initiate any settlement discussions involving a payment of money.

### B. MATERIAL TERMS

Even if there had been proof that GRSM had authority to bind its client to a monetary settlement for the finite sum in the Klutho Email, the *Motion to Enforce* would still fail for lack of agreement on material terms. The Klutho Email – alone – did not contain all of the material terms necessary for settlement. The evidence proved that the lawyers anticipated a formal settlement agreement containing additional terms to follow the Klutho Email, and in fact, proceeded in that fashion.

Settlement agreements "'are governed by the same general principles of contract law as any other agreement.'" *Janky v. Batistatos*, 559 F. Supp. 2d 923, 929 (N.D. Ind. 2008) (quoting *Zimmerman v. McColley*, 826 N.E.2d 71, 76 (Ind. Ct. App. 2005)). As such, an "acceptance which varies from the offer is not an acceptance at all, but instead is considered a counteroffer." *Id*. Additionally, "[a] settlement agreement is enforceable if there was a meeting of the minds or mutual assent to all material terms." *Beverly*, 817 F.3d at 333.

Here, the Klutho Email confirmed agreement only as to a finite sum and included an attachment with a proposed agreement. Plaintiff's filings that accompany her *Motion to Enforce* show that in response, Plaintiff proposed revisions

9

to the terms of the settlement agreement. (Dkt. 62). There was never a meeting of the minds on those revisions.

More specifically, on August 5, 2025, Attorney Klutho sent a proposed settlement agreement to Plaintiff's counsel. (Dkt 62-3). Two days later, on August 7, 2025, Plaintiff's counsel responded with a different version of the proposed settlement agreement, noting, "I have attached the agreement submitted to the court with the amounts entered and a few minor redlined revisions." (Dkt 62-4).

Plaintiff's proposed agreement included revisions to Provision 1, which reduced the payment date from thirty days to fourteen business days and allocated the settlement payment from one check payable to Plaintiff to three separate checks. (Dkt. 74). Under contract law, Plaintiff's proposed agreement served as a counteroffer, rather than acceptance because it altered the terms.

Plaintiff argues that her version was not a new version at all and that the revisions were minor. Plaintiff reminds that the parties had already discussed and accepted the terms of the proposed settlement agreement when they jointly provided one to the Court in advance of the Settlement Conference, approximately four months prior. Plaintiff is only partially correct. The Court's Settlement Conference Scheduling Order does require that the parties' draft settlement agreement "should contain all material provisions that any party believes should be included." And, the parties did submit a proposed settlement agreement as ordered on April 16, 2025.

However, providing a proposed settlement agreement to the Court in advance of planned negotiations does not constitute a meeting of the minds on all terms. The Court's Order also underscores: "[t]he purpose of the draft settlement agreement is to reach agreement on as many provisions as possible and *to provide a document for discussion during the conference.*" (Dkt. 33) (emphasis added).

Proposed settlement agreements can be further negotiated and revised over the course of a settlement conference. The parties' submission satisfied the Court's directive to submit a proposed agreement for the purpose of having a document for discussion during the conference. The parties are not bound by that proposed

10

agreement because no negotiated settlement was ultimately reached at the Settlement Conference, or thereafter.

Additionally, Plaintiff's revisions to the payment provisions–the timing of payment and the allocation of the amount–were, in fact, changes to the material terms of the agreement. Payment terms are material terms of settlement agreements. *See Janky*, 559 F. Supp. 2d at 929 (N.D. Ind. 2008) ("an acceptance which varies from the offer is not an acceptance at all, but instead is considered a counteroffer.") In the same way, Plaintiff's draft settlement agreement, which proposed an alteration to the payment provisions both in timing and allocation, constituted a counterproposal under contract law. National RV never accepted the counterproposal.

GRSM had no authority at any time to communicate a monetary settlement to Plaintiff's counsel. Even if the evidence proved they had been so authorized, the dueling draft agreements negate an enforceable settlement.

For these reasons, the Undersigned recommends the district court judge **DENY** Plaintiff's *Motion to Enforce*.

### IV. CONCLUSION

Lawyers should be able to rely upon accurate representations of opposing counsel, especially relating to authority to settle a case. Certainly, the Court expects that counsel will accurately communicate with opposing counsel in all respects, including within the bounds of their authority to negotiate resolution of a case and in accordance with their professional obligations and duties.

Although GRSM had no authority from National RV to settle the case, that finding became clear only after a full Evidentiary Hearing. Plaintiff's attorneys would have had no reason to question Attorney Klutho's authority to discuss a monetary resolution or to believe her communications leading up the Klutho Email were unauthorized or contrary to her client's directives. The evidence offered at the Evidentiary Hearing focused on communications traditionally protected by attorney-client privilege protection, and therefore, would not be communications

Plaintiff's counsel would have been privy to or permitted to explore. National RV elected to waive those protections on its communications to oppose the *Motion to Enforce*.

Even so, the question of authority presented here does not center on what Plaintiff and her attorneys could have known. Instead, the analysis tasks the Court with evaluating the attorney-client communications leading up to the Klutho Email. An analysis of the law applicable to the evidence demonstrates that National RV did not provide GRSM, Milam, or Klutho with the requisite authority to offer any monetary amount to settle this case and further, that a meeting of the minds on material terms was never reached.

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the District Judge **DENY** *Plaintiff's Motion to Enforce*.

The Magistrate Judge further **RECOMMENDS** that Plaintiff's counsel be afforded leave to pursue her attorney's fees incurred in litigating the *Motion to Enforce*. If Plaintiff desires to do so, Plaintiff should file any such motion within ten (10) days of this Report and Recommendation.

Date: October 14, 2025

Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

Distributed electronically to ECF registered counsel of record.